**KPMG PEAT MARWICK, Petitioner,**

v.

**HARRISON COUNTY HOUSING
FINANCE CORP.,
Respondent.**

No. 97–0729.

Supreme Court of Texas.

Argued Oct. 20, 1998.

Decided March 25, 1999.

Timothy W. Mountz, Dallas, Jane A. Nenniger, Macey Reasoner Stokes, Houston, for Petitioner.

Gregory P. Grajczyk, Milbank, SD, James W. Hill, Longview, for Respondent.

Justice ENOCH delivered the opinion of the Court.

We are asked to decide whether Harrison County Housing Finance Corporation's (HCH) claims against KPMG Peat Marwick, LLP for violations of the Deceptive Trade Practices Act and negligence are barred by the two-year statute of limitations. The trial court granted summary judgment for Peat Marwick on all of HCH's claims. But the court of appeals reversed the trial court's summary judgment on the DTPA and negligence claims and remanded these for trial.[1]

Applying the discovery rule, the court of appeals held that neither claim was time-barred. It reasoned that Peat Marwick had not presented conclusive evidence that HCH discovered or in the exercise of reasonable diligence should have discovered the wrongful act which allegedly caused its injury more than two years before HCH filed suit.[2]

To the contrary, we conclude that Peat Marwick has conclusively established that HCH's claims against Peat Marwick accrued more than two years before suit was filed. Accordingly, we reverse the court of appeals' judgment on both the DTPA and negligence claims and render judgment that HCH take nothing.

From 1980 to 1990, Peat Marwick provided accounting and auditing services to HCH for a series of bonds HCH had issued. In addition, Peat Marwick was to ensure that the trustee for the bonds, First Interstate Bank of California, complied with the trust indenture.

Under the trust indenture, one of First Interstate's duties as trustee was overseeing a capital reserve fund established to pay principal or to redeem bonds. And during the period of the auditing services, specifically in 1985, First Interstate hired, on its own behalf, a partner from Peat Marwick to prepare a special procedures report about the trust assets. But Peat Marwick did not tell HCH about this dual representation.

On February 1, 1993, HCH filed suit against First Interstate and one of its shareholders, alleging breach of fiduciary duty, breach of contract, negligence, and gross negligence. HCH alleged that in February 1989, First Interstate prematurely sold assets in the capital reserve fund, resulting in a loss in excess of $621,000 when the bonds were refunded in December 1991. First Interstate and its shareholder moved for summary judgment on several grounds, including that the bank had not mismanaged the trust funds, that HCH was well informed of the bank's actions through monthly reports, and that HCH's claims were barred by the appli-

1. 948 S.W.2d 941.

2. *Id.* at 947.

cable statutes of limitations. Without specifying the grounds, the trial court granted First Interstate's motion for summary judgment. HCH did not appeal.

On October 1, 1993, while the First Interstate lawsuit was still pending, HCH learned about Peat Marwick's 1985 agreement with First Interstate and that Peat Marwick's 1985 audit of First Interstate's records had revealed irregularities in First Interstate's accounting of the trust assets. According to HCH, Peat Marwick informed First Interstate but not HCH of the irregularities. HCH further claims it then discovered that Peat Marwick had advised First Interstate that the capital reserve fund could be set at an amount lower than what the trust indenture required. And HCH asserts that Peat Marwick did not report that advice to HCH.

HCH sued Peat Marwick in federal court on July 14, 1995, but the case was dismissed for lack of subject matter jurisdiction. HCH then filed suit in state court. For this appeal, Peat Marwick concedes that July 14, 1995, is the applicable date to determine whether HCH's claims were barred when filed.[3]

In this case, HCH alleged that Peat Marwick, as the trust's auditor, either negligently or intentionally failed to disclose First Interstate's mismanagement of the trust. HCH further alleged causes of action for breach of warranty (which is not part of this appeal) and violations of the DTPA.

In support of its motion for summary judgment on limitations grounds, Peat Marwick attached HCH's original petition in the suit against First Interstate. That petition sought recovery for the same injury—the premature selling of the fund assets in 1989 resulting in a loss in excess of $621,000—that HCH alleges in this suit was caused by Peat Marwick's wrongful conduct. Peat Marwick

contends that the petition against First Interstate demonstrates that HCH knew of its claim no later than February 1, 1993. Apparently in response, HCH amended its petition to allege that not until October 1, 1993, did it learn of Peat Marwick's role in the disputed financial irregularities. But it does not appear that HCH filed a formal response to Peat Marwick's motion for summary judgment or produced any evidence to defeat the motion. As mentioned, the trial court granted summary judgment.

## I. Summary Judgment Standard of Review

■■■ The standard for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c) is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law.[4] In conducting our review, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor.[5]

■■■ A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense.[6] Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury.[7] If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.[8]

3. See TEX. CIV. PRAC. & REM.CODE § 16.064(a).

4. See, e.g., Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.1991); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548–49 (Tex.1985).

5. See Nixon, 690 S.W.2d at 548–49.

6. See Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 530 (Tex.1997).

7. See Burns v. Thomas, 786 S.W.2d 266, 267 (Tex.1990); Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 518 n. 2 (Tex.1988).

8. See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979).

## II. Accrual of HCH's DTPA Claim

A DTPA claim is subject to a two-year statute of limitations. The claim accrues when "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."[9] Thus, the discovery rule applies to HCH's DTPA claim.[10] We note that effective September 1, 1995, the Legislature amended the DTPA to exempt professional services with some exceptions. But because this suit was originally filed before that date, the 1995 amendments do not apply.[11]

Contending that during the relevant time period Peat Marwick had worked for First Interstate independently as well as for HCH, HCH argues that its claims against Peat Marwick did not accrue until October 1, 1993, when it learned through discovery in the First Interstate suit that Peat Marwick knew of financial irregularities in the bond issue but failed to report them to HCH. In agreeing with HCH, the court of appeals erroneously concluded that in recent decisions this Court employed a "new formulation" of the discovery rule.[12] The court of appeals held that under this "new formulation," a claim does not accrue until plaintiff knows not only of the injury, but the specific nature of each wrongful act that may have caused the injury.[13] This is incorrect. The rule in those cases was, as it is in this one, that accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury.[14]

The summary judgment evidence established that the wrongful injury HCH alleges it suffered is the loss of over $621,000 in December 1991 when it refunded the bonds following the premature sale in 1989 of the reserve fund assets. Significantly, HCH sued First Interstate over this precise injury in early 1993, less than two years later. Indisputably, HCH was aware by then of its injury and that its injury was caused by the wrongful conduct of another.

The loss from the premature sale of the fund assets should have caused HCH to investigate not only the possibility that First Interstate had mismanaged the fund assets, as HCH apparently did because it sued First Interstate, but also Peat Marwick's possible involvement in the mismanagement and loss. HCH had hired Peat Marwick to do annual trust asset audits, including the reserve fund, to ensure compliance with the trust indenture. Therefore, the loss should have caused HCH to also investigate why its auditor, Peat Marwick, did not discover or report the mismanagement.

As an independent ground to defeat summary judgment, HCH asserts that Peat Marwick fraudulently concealed its wrongful conduct, and limitations did not begin to run until HCH knew or should have known of its injury. HCH also asserts that its pleading is sufficient summary judgment evidence of the affirmative defense of fraudulent concealment to defeat Peat Marwick's summary judgment motion. In both respects, HCH is incorrect.

First, a party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion[15] and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense.[16] A mere pleading does not satisfy

9. Tex. Bus. & Com.Code § 17.565.

10. See Burns, 786 S.W.2d at 267; see also Murphy v. Campbell, 964 S.W.2d 265, 271 (Tex.1997).

11. See Tex. Bus. & Com.Code § 17.49(c).

12. See 948 S.W.2d at 946 (citing Diaz v. Westphal, 941 S.W.2d 96, 99 (Tex.1997); S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996)).

13. See id. at 947.

14. See Murphy, 964 S.W.2d at 271; Diaz, 941 S.W.2d at 99; S.V., 933 S.W.2d at 4; see also Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998); Russell v. Ingersoll–Rand Co., 841 S.W.2d 343, 344 n. 3 (Tex.1992); Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex.1990).

15. See Tex.R. Civ. P. 166a(c); Hudson v. Wakefield, 711 S.W.2d 628, 630 n. 1 (Tex.1986); City of Houston, 589 S.W.2d at 679.

16. See American Petrofina, Inc. v. Allen 887 S.W.2d 829, 830 (Tex.1994); Nichols v. Smith, 507 S.W.2d 518, 521 (Tex.1974).

either burden.[17] Thus, even assuming that HCH pled fraudulent concealment as an affirmative defense to Peat Marwick's answer pleading limitations, HCH still had to respond to Peat Marwick's summary judgment motion. There is no such response in the record. Therefore, HCH did not carry its burden to both plead the defense and support it with summary judgment evidence.

■ Second, when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury.[18] Because Peat Marwick's summary judgment evidence conclusively established that HCH discovered its injury more than two years before it sued Peat Marwick, Peat Marwick is entitled to summary judgment. As with the discovery rule, once HCH knew that it had been injured by fund mismanagement, it should have investigated why its auditor, Peat Marwick, had failed to discover or report the mismanagement to HCH. Accordingly, fraudulent concealment pleadings do not rescue HCH's DTPA claim.

### III. Accrual of HCH's Negligence Claim

■ Under Section 16.003 of the Civil Practice and Remedies Code, negligence claims, including accounting malpractice, must be brought "not later than two years after the day the cause of action accrues."[19] Because the statute does not define or specify when accrual occurs, we look to the common law to determine when a cause of action accrues.[20]

HCH argues that its negligence claim against Peat Marwick did not accrue until it learned through discovery in the First Interstate suit of Peat Marwick's wrongful conduct. We disagree.

This Court has never considered whether the discovery rule applies to auditing malpractice claims. Assuming without deciding that it does, however, the summary judgment evidence establishes that HCH knew or should have known of its negligence claim more than two years before it filed suit. HCH relies on the same wrongfully caused injury asserted in the DTPA cause of action to claim that Peat Marwick was negligent. And as we have mentioned, the evidence conclusively establishes that HCH knew of the reserve fund's mismanagement, at least, no later than when it filed the first suit against First Interstate, February 1, 1993. Consequently, HCH's negligence claim is also time-barred. Furthermore, as with HCH's DTPA claims, its fraudulent concealment pleadings do not rescue the negligence claim.

Peat Marwick has established the affirmative defense of limitations by conclusively showing that HCH's causes of action accrued more than two years before HCH filed suit. As a result, limitations bars HCH's claims for DTPA violations and negligence and Peat Marwick is entitled to summary judgment. Therefore, we reverse the court of appeals' judgment and render judgment that HCH take nothing.

---

17. *See City of Houston,* 589 S.W.2d at 678.

18. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex.1994); *Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d 806, 809 (Tex.1979).

19. Tex. Civ. Prac. & Rem.Code § 16.003(a); *see also Murphy,* 964 S.W.2d at 270.

20. *See Childs,* 974 S.W.2d at 36; *Murphy,* 964 S.W.2d at 270.