**Reversed and Remanded and Majority and Dissenting Opinions filed March 12, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-01110-CV

---

**AVI RON, Appellant**

**V.**

**AIRTRAN AIRWAYS, INC., Appellee**

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 983669**

---

## DISSENTING OPINION

Today this court bars an airline from enforcing provisions of its contract of carriage against a passenger because of a purported fact issue as to whether the

airline failed to comply with Title 14, section 253.4(b) of the Code of Federal Regulations. This holding appears to be the first of its kind in the nation. In light of the reasoning of the United States Court of Appeals for the Fifth Circuit in *Casas v. American Airlines, Inc.*, 304 F.3d 517, 523–25 (5th Cir. 2002), this court should conclude that the passenger's attempt to avoid terms of the contract of carriage is a matter in avoidance, which the passenger had the burden to plead and prove. The summary-judgment evidence conclusively proves the terms of the contract of carriage between the airline and the passenger, and the airline was not required to prove that it complied with the federal regulation in question. In response, the passenger did not raise a genuine fact issue as to whether the airline failed to comply with Title 14, section 253.4(b) of the Code of Federal Regulations. Because the summary-judgment evidence does not raise the necessary fact issues regarding this matter in avoidance, the trial court did not err in granting summary judgment. This court should follow the reasoning from the Fifth Circuit and should not pile inference upon inference to find a genuine issue of material fact.

## Background

Appellant/plaintiff Avi Ron is a resident of Houston, Texas, and a very experienced traveler. He has flown over 5,000,000 miles, and estimates that he flies approximately 200 flights per year. On December 9, 2009, he purchased airline tickets on the internet from appellee/defendant AirTran Airways, Inc. for his family and him to fly from Nassau, Bahamas to Orlando, Florida on January 3, 2010, on their way back to Houston. On January 3, 2010, AirTran cancelled the flight. In his suit against AirTran, Ron asserts that because of this cancellation, he had to charter a private plane to fly from Nassau to Fort Lauderdale, Florida and incur additional expenses in the total amount of $11,491.86, which he seeks to

recover from AirTran. At the time the trial court granted summary judgment in favor of AirTran, the only claim that Ron was asserting against AirTran was a breach-of-contract claim.

In its motion for summary judgment, AirTran asserted, among other grounds, that Ron's breach-of-contract claim fails as a matter of law under the terms of AirTran's contract of carriage, which provide that passengers are not entitled to receive any compensation for expenses incurred due to flight cancellations. Ron contends that the trial court erred in granting summary judgment in favor of AirTran because, according to Ron, the summary-judgment evidence shows that AirTran failed to comply with Title 14, section 253.4(b) of the Code of Federal Regulations and therefore AirTran cannot claim the benefit of the contract terms that would preclude Ron from recovering compensation for expenses incurred due to flight cancellations.

### The Fifth Circuit's Reasoning in *Casas v. American Airlines, Inc.*

The United States Court of Appeals for the Fifth Circuit has concluded that a passenger can be contractually bound by the exculpatory provisions incorporated by reference into an airline's contract of carriage if the airline gave the passenger reasonable notice of these provisions, but without requiring that the airline show compliance with Title 14, section 253.4(b) of the Code of Federal Regulations. *See Casas v. American Airlines, Inc.*, 304 F.3d 517, 523–25 (5th Cir. 2002). Under this precedent, which this court should follow, AirTran may prove that the exculpatory provisions upon which it relies were incorporated by reference into its contract with Ron without showing compliance with section 253.4(a) or section

3

253.4(b).[1]  Thus, to the extent that noncompliance with these regulations would preclude AirTran from enjoying the benefits of the exculpatory provisions, such non-compliance would constitute a matter in avoidance of the exculpatory provisions, which Ron would have the burden of pleading and proving.  *See KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 749–50 (Tex. 1999); *Securitycomm Group, Inc. v. Brocail*, No. 14-09-00295-CV, 2010 WL 5514333, at \*11 (Tex. App.—Houston [14th Dist.] Dec. 28, 2010, pet. denied) (mem. op.).

**Passenger's Failure to Raise Genuine Fact Issue as to Matter in Avoidance**

In determining whether Ron produced evidence raising a genuine fact issue regarding this matter in avoidance, it is first necessary to review the text of section 253.4, which reads as follows:

> (a) A ticket or other written instrument that embodies the contract of carriage may incorporate contract terms by reference (i.e., without stating their full text), and if it does so shall contain or be accompanied by notice to the passenger as required by this part.  In addition to other remedies at law, an air carrier may not claim the benefit against the passenger of, and the passenger may not be bound by, any contract term incorporated by reference if notice of the term has not been provided to that passenger in accordance with this part.

---

[1] The majority states that the airline in *Casas* complied with section 253.4.  *See ante* at p. 20. But, as construed by the majority, section 253.4 requires the airline to [1] make the full text of each incorporated term available for public inspection at each of its airport and city ticket offices under section 253.4(b), [2] provide free copies of these terms to passengers upon request under section 253.4(b), and [3] provide the notice of incorporated terms required under section 253.5. Though the *Casas* court did address whether the airline provided reasonable notice to the passenger regarding the exculpatory provisions, the *Casas* court did not require compliance with either section 253.4 or section 253.5.  *See Casas*, 304 F.3d at 523–25.  The *Casas* court did not conclude that the airline complied with section 253.4, and there is no statement in *Casas* that the airline made the full text of the exculpatory provisions available for inspection at each of its airport and city ticket offices.  *See id.*

(b) Each air carrier shall make the full text of each term that it incorporates by reference in a contract of carriage available for public inspection at each of its airport and city ticket offices.

(c) Each carrier shall provide free of charge by mail or other delivery service to passengers, upon their request, a copy of the full text of its terms incorporated by reference into a contract. Each carrier shall keep available at all times, free of charge, at all locations where its tickets are sold within the united States information sufficient to enable passengers to order the full text of such terms.

14 C.F.R. § 253.4 (West 2013). As used in this regulation, a ticket office means a station, office, or other location where tickets are sold that is under the charge of a person employed by the airline.[2] 14 C.F.R. § 253.3 (West 2013).

In his summary-judgment affidavit, Ron testifies that an AirTran agent at the Nassau airport told him that she did not have the terms and condition of Ron's contract with AirTran available in the Bahamas. Presuming for the sake of argument that Ron's affidavit raises a genuine fact issue as to whether AirTran made available for public inspection in the Bahamas the full text of each term incorporated by reference into its contract of carriage, the summary judgment evidence does not address whether AirTran had a ticket office (a location where AirTran tickets were sold that was under the charge of an AirTran employee) in the

---

[2] The majority cites language from the Federal Register, in which the Civil Aeronautics Board states that "each carrier must ensure that concise and correct information concerning these terms is immediately available to the public wherever its tickets are sold." *Ante* at p. 18. (quoting Rules and Regulations, Civil Aeronautics Board, 47 F.R. 52128, 52132 (Nov. 19, 1982)). This language might suggest that terms incorporated by reference in a contract of carriage must be available for public inspection wherever an airline's tickets are sold. But, under the unambiguous language of the regulations, this information need not be available at locations where the airline's tickets are sold that are not under the charge of a person employed by the airline. *See* 14 C.F.R. §§ 253.3, 253.4. The Civil Aeronautics Board says so in the same document in the Federal Register. *See* Rules and Regulations, Civil Aeronautics Board, 47 F.R. 52128, 52132 (Nov. 19, 1982) (stating that "[i]n § 253.4(b), the Board is adopting the suggestion that the full text of the contract of carriage be made available for public inspection only at the airlines' airport and city ticket offices rather than at all ticket sales locations").

Bahamas. The majority concludes that it is reasonable to infer that AirTran customer-service counters are ticket offices based upon the following: (1) under section 253.5, AirTran was required to give Ron notice that he could inspect the full text of each term incorporated by reference at AirTran's airport or city ticket offices; (2) AirTran's contract of carriage states that the full text of such terms is available for inspection at its airport and city ticket offices; (3) the confirmatory email Ron received from AirTran states that AirTran's contract of carriage may be inspected at AirTran's customer-service counters. *See ante* at p. 20–21. A statement by AirTran that certain terms may be inspected at ticket offices and another statement by AirTran that these terms may be inspected at customer-service counters does not reasonably lead to a conclusion that customer-service counters are ticket offices. Because there is no testimony in the summary-judgment evidence that there was a customer-service counter in the Nassau airport, the majority infers this conclusion from various statements in two summary-judgment affidavits. *See id*. The majority then infers that the customer service counter at the Nassau airport was under the charge of an AirTran employee. *See id*. Based upon the foregoing inferences, the majority finds a genuine fact issue as to whether there was a location in Nassau where AirTran tickets were sold that was under the charge of an AirTran employee. This court should not find a genuine fact issue precluding summary judgment by unreasonable inferences from the summary-judgment evidence or by piling one inference upon another. *See Schlumberger Well Serveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968); *Engstrom v. First Nat'l Bank of Eagle Lake*, 936 S.W.2d 438, 445 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

Considering all the evidence in the light most favorable to Ron, crediting evidence favorable to Ron if reasonable jurors could, and disregarding contrary

evidence unless reasonable jurors could not, reasonable and fair-minded jurors could not find, based upon the summary-judgment evidence, that there was a location in Nassau where AirTran tickets were sold that was under the charge of an AirTran employee. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582–84 (Tex. 2006). If there were no such locations in the Bahamas, then there was no violation of section 253.4(b). Because Ron did not raise a fact issue regarding this matter in avoidance, the trial court did not err in granting summary judgment. *See KPMG Peat Marwick*, 988 S.W.2d at 749–50.

**Passenger's Failure to Challenge Sufficiency of Notice under Section 253.5, Which Constitutes Notice Provided to Passenger in Accordance With Part 253**

In addition, to prove this matter in avoidance, Ron must show that "notice of the [exculpatory provisions] has not been provided to [Ron] in accordance with this part." 14 C.F.R. § 253.4(a). Presuming for the sake of argument that compliance with section 253.4(b) constitutes notice provided to Ron in accordance with part 253 of the Code of Federal Regulations, notice under section 253.5 also constitutes notice provided to Ron in accordance with part 253 of the Code of Federal Regulations. This regulation provides as follows:

> Except as provided in § 253.8, each air carrier shall include on or with a ticket, or other written instrument given to a passenger, that embodies the contract of carriage and incorporates terms by reference in that contract, a conspicuous notice that:
>
> (a) Any terms incorporated by reference are part of the contract, passengers may inspect the full text of each term incorporated by reference at the carrier's airport or city ticket offices, and passengers have the right, upon request at any location where the carrier's tickets are sold within the United States, to receive free of charge by mail or other delivery service the full text of each such incorporated term;

7

(b) The incorporated terms may include and passengers may obtain from any location where the carrier's tickets are sold within the United States further information concerning:

(1) Limits on the air carrier's liability for personal injury or death of passengers, and for loss, damage, or delay of goods and baggage, including fragile or perishable goods;

(2) Claim restrictions, including time periods within which passengers must file a claim or bring an action against the carrier for its acts or omissions or those of its agents;

(3) Rights of the carrier to change terms of the contract. (Rights to change the price, however, are governed by § 253.7);

(4) Rules about reconfirmation of reservations, check-in times, and refusal to carry;

(5) Rights of the carrier and limitations concerning delay or failure to perform service, including schedule changes, substitution of alternate air carrier or aircraft, and rerouting.

14 C.F.R. § 253.5 (West 2013). Ron does not assert that AirTran failed to comply with section 253.5. Because notice to Ron under section 253.5 constitutes notice to Ron of the exculpatory provisions in accordance with part 253, even if Ron had proved that AirTran failed to comply with section 253.4(b), this proof would not allow Ron to avoid enforcement of the exculpatory provisions under section 253.4(a).

Neither the majority nor the parties have cited, and research has not revealed, any case from any jurisdiction in which an airline was not allowed to enforce a provision of its contract of carriage against a passenger because the airline failed to comply with section 253.4(b). The majority cites *Price v. Delta*

*Airlines, Inc.*, 5 F.Supp.2d 226 (D. Vt. 1998). *See ante* at p. 19. But the *Price* case did not involve any issue regarding section 253.4(b). *See Price*, 5 F.Supp.2d at 230–32. The *Price* court denied a summary-judgment motion filed by two airlines and held that the plaintiff had raised a fact issue as to whether the airlines were precluded from enforcing a provision incorporated by reference in the contract of carriage because notice had not been provided to the passengers under section 253.5. *See id.* In *Price*, the plaintiff submitted evidence indicating that the two passengers (the plaintiff and her son) had not received the "Notice of Incorporated Terms" required by section 253.5. *See* 14 C.F.R. § 253.5 (requiring a "Notice of Incorporated Terms"); *Price*, 5 F.Supp.2d at 230. The plaintiff in *Price* did not allege that the airlines failed to comply with section 253.4(b) or produce evidence of any such failure to comply. *See id.* at 230–32. The *Price* court stated that, "[i]f notice complying with 14 C.F.R. § 253.4 was not provided, the Prices will not be bound by the claim restriction term." *Id.* at 232. But, the "notice complying with 14 C.F.R. § 253.4" to which the court referred was notice under section 253.5, which is required by section 253.4(a). *See* 14 C.F.R. §§ 253.4, 253.5; *Price*, 5 F.Supp.2d at 230–32. Indeed, though the *Price* court mentioned in passing the requirements of subsections (b) and (c) of section 253.4, the *Price* court never stated that these subsections are part of the notice required by section 253.4(a). *See Price*, 5 F.Supp.2d at 231.

Today's holding has potentially devastating consequences for the United States airline industry. Under this court's construction of section 253.4, if an airline's standard terms that are incorporated by reference into its contract of carriage become unavailable in a single airport or city ticket office of that airline, then the airline will lose all of the protections of these contractual terms against all of the airline's passengers in interstate and overseas air transportation during the

period in which these terms are unavailable for inspection. This harsh result will apply no matter how far that one ticket office is from the passengers' respective domiciles or from the places where the passengers purchased their tickets, and despite the fact that these terms are available at any time on the internet.

## CONCLUSION

Today the court bars the enforcement of terms from an airline's contract of carriage against a passenger based upon a purported fact issue as to whether the airline failed to comply with Title 14, section 253.4(b) of the Code of Federal Regulations. The better course would be for this court to adopt the sound reasoning of the Fifth Circuit in *Casas v. American Airlines, Inc*. and conclude that the passenger failed to raise a fact issue regarding this matter in avoidance. The majority piles inference upon inference in reaching the opposite conclusion. Even if Ron had raised a fact issue in this regard, this fact issue would not be sufficient to avoid enforcement of AirTran's incorporated contract terms under section 253.4(a). Rather, Ron also would have had to challenge whether the airline complied with section 253.5, and Ron has not done so. Accordingly, this court should affirm the trial court's judgment. Because it does not, I respectfully dissent.


/s/     Kem Thompson Frost
        Justice


Panel consists of Justices Frost, Christopher, and Jamison (Christopher, J., majority).

10