MEMORANDUM OPINION

No. 04-05-00379-CV

Laura BRANDON, Olivia D. Cornyn, Bernice Polansky, 

Joan Polansky, Connie Z. Seidel, and Patricia Tijerina ,

Appellants

v.

SOUTHWEST AIRLINES CO.,

Appellee

From the 408th Judicial District Court, Bexar County, Texas

Trial Court No. 2002-CI-2719

Honorable Michael P. Peden , Judge Presiding (1)




Opinion by: Karen Angelini , Justice



Sitting: Catherine Stone , Justice

 Karen Angelini , Justice

 Sandee Bryan Marion , Justice



Delivered and Filed: August 30, 2006



AFFIRMED

 Appellants Nora Brandon, Olivia Cornyn, Bernice Polansky, Joan Polansky, Connie Seidel, and Patricia Tijerina ("the
employees") appeal from a summary judgment granted in favor of their employer, Southwest Airlines Company
("Southwest"). While working at the Southwest Airlines Reservation Center, the employees allegedly suffered personal
injuries caused by exposure to contaminants in the reservation center. They sued Southwest for battery, common law fraud,
intentional infliction of emotional distress, and negligence. In response, Southwest filed a motion for summary judgment,
arguing that the employees' claims were barred by the statute of limitations. The trial court granted summary judgment, and
on appeal, the employees argue that the trial court erred in (1) granting summary judgment, and (2) sustaining Southwest's
objections to their affidavits. Because we agree that the statute of limitations bars the employees' claims, we affirm the
judgment of the trial court.

BACKGROUND 

 The employees all worked inside the Southwest Reservation Center in San Antonio, Texas until 1995. In 1995 and 1996,
they were all examined and diagnosed with "sick building syndrome" by Dr. Andrew Campbell. Although they had been
diagnosed with sick building syndrome, they did not file this suit against Southwest until February 22, 2002, more than five
years later. Southwest moved for summary judgment on numerous grounds, one of which was that the statute of limitations
barred the employees' suit. The trial court granted summary judgment in favor of Southwest, which the employees now
appeal.

Statute of Limitations


 The employees sued Southwest for battery, common law fraud, intentional infliction of emotional distress, and negligence.
In its motion for summary judgment, Southwest asserted that all their claims were barred by the statute of limitations. We
agree. (2)

A. Standard of Review

 Southwest moved for summary judgment based on an affirmative defense: the statute of limitations. To prevail on its
motion, Southwest had to prove its affirmative defense as a matter of law. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548 (Tex. 1985). That is, to be entitled to summary judgment based on the affirmative defense of the statute of
limitations, Southwest had to present summary judgment evidence conclusively proving all the elements of the affirmative
defense as a matter of law. Pustejovsky v. Rapid-Am., Corp., 35 S.W.3d 643, 646 (Tex. 2000). And, if Southwest
established that the statute of limitations barred the employees' claims, then, to avoid summary judgment, the employees
had to produce summary judgment evidence raising a fact issue. KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999). In reviewing the grant of Southwest's motion for summary judgment, we take as
true all evidence favoring the employees and indulge every reasonable inference in their favor. Park Place Hosp. v. Milo,
909 S.W.2d 508, 510 (Tex. 1995).

B. Accrual of Cause of Action

 The statute of limitations applicable to battery, intentional infliction of emotional distress, and negligence states that suit
must be filed "not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. §
16.003(a) (Vernon Supp. 2006). For a fraud cause of action, the statute of limitations mandates that suit be filed "not later
than four years after the day the cause of action accrues." Id. § 16.004(a)(4) (Vernon 2002). 

 The party asserting the affirmative defense of limitations must conclusively prove when the cause of action accrued.
KPMG, 988 S.W.2d at 748. "[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of
injury is not discovered until later, and even if all resulting damages have not yet occurred." S.V. v. R.V., 933 S.W.2d 1, 4
(Tex. 1996).

 On appeal, the employees argue that the statute of limitations does not bar their claims because the fraudulent concealment
by Southwest "justifies application of the discovery rule exception." 

 The discovery rule acts as a limited exception to the general accrual rule. Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex.
1997). Under the discovery rule, a cause of action will not accrue until the plaintiff knew or, by exercising reasonable
diligence, should have known of the facts giving rise to the claim. Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734
(Tex. 2001).

 With regard to fraudulent concealment, when a defendant is under a duty to make disclosure but instead conceals the
existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of
limitations until the party learns of the right of action or should have learned of it through the exercise of reasonable
diligence. Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983). "The estoppel effect of fraudulent concealment ends when
a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which,
if pursued, would lead to discovery of the concealed cause of action." Id. at 909. "Knowledge of such facts is in law
equivalent to knowledge of the cause of action." Id. 

 Here, the employees argue that Southwest concealed the "presence of bioaerosols, microtoxins, and chemicals which
ultimately caused their injuries." For support, they point to evidence that in 1999, OSHA issued a citation to Southwest,
finding microbial contamination in the building where the employees worked. The employees also point to other evidence
that they argue show that Southwest knew about the contamination in 1995 and 1996. According to the employees, although
Southwest knew about the contamination, "they did not find out about the specifics until being told by their attorney in
2001." 

 The employees, however, ignore that the record shows that by 1996, all the employees had been diagnosed with "sick
building syndrome" by Dr. Campbell and been told that they should not return to work at the Southwest Reservations
Center because their injuries were directly related to the center. Southwest is only estopped from relying on its limitations
defense until the employees learned "of facts, conditions, or circumstances which would cause a reasonably prudent person
to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action."Borderlon, 661 S.W.2d at
909.

 Assuming, arguendo, that Southwest fraudulently concealed the presence of contaminants in the Southwest Reservations
Center, the undisputed evidence in the record shows that by 1996, the employees had been diagnosed with "sick building
syndrome" and been told not to return to work because their injuries were directly related to the center. These facts would
lead a reasonable person to inquire into the fault of Southwest which would lead to the discovery of any concealment. See
id.Thus, any fraudulent concealment by Southwest only tolled the employees' claims until 1996. And, because the
employees filed suit more than five years after 1996, their claims are barred by the statute of limitations.

 The employees also argue that the discovery rule is not limited to the discovery of an injury and should apply to
"circumstances where it is difficult for the injured party to learn of the negligent act or omission." 

 The discovery rule defers accrual of a cause of action "until a plaintiff discovers or, through the exercise of reasonable care
and diligence, should discover the 'nature of his injury.'" Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998). Discovering
the "nature of the injury" "requires knowledge of the wrongful act and the resulting injury." Id. "Thus, when the discovery
rule applies, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the
injury and that it was likely caused by the wrongful acts of another." Id. "[O]nce these requirements are satisfied, limitations
commences, even if plaintiff does not know the exact identity of the wrongdoer." Id. (emphasis added). 

 In Childs v. Haussecker, the Texas Supreme Court specifically stated that "[t]hese principles apply equally in latent
occupational disease cases." Id. The court held that 

 the approach that best balances the interests implicated in latent occupational disease cases is one that defers accrual until a
plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he
or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the
injury is likely work-related.

Id. Here, by 1996, the employees were diagnosed by their doctor and told that their injuries were related to their place of
work. Therefore, applying the discovery rule, the statute of limitations began to run at least five years before the employees
filed this case. Their claims are thus barred by the statute of limitations.

C. The Employees' Affidavits

 In response to Southwest's motion for summary judgment, the employees attached their affidavits. Southwest's objections
to these affidavits were sustained by the trial court. On appeal, the employees claim that these affidavits should have been
considered by the trial court and that they raise a fact issue as to Southwest's limitations defense. (3) However, the statements
in the affidavits do not challenge the fact that the employees were aware of their injury no later than 1996. Because these
affidavits do not challenge any fact issue necessary for summary judgment to be granted based on the statute of limitations,
we need not decide whether the trial court properly sustained Southwest's objections.

Conclusion


 Because the employees' claims accrued in 1996, their claims are barred by the statute of limitations. We, therefore, hold
that the trial court properly granted summary judgment in favor of Southwest and affirm the judgment of the trial court.





 Karen Angelini , Justice





1. The Honorable Michael P. Peden signed the final judgment. The Honorable Rebecca Simmons presided over the
summary judgment hearing.

2. Here, Southwest raised multiple grounds in their motion for summary judgment. When the order granting summary
judgment does not specify the grounds upon which the trial court relied, we must affirm the judgment if any of the theories
raised in the motion for summary judgment are meritorious. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380
(Tex. 1993). Because we have determined that the statute of limitations bars all the employees' claims, we need not address
the other grounds raised in the motion for summary judgment and challenged on appeal by the employees.

3. The relevant statements from the affidavits are: (1) "The intentional conduct of Southwest Airlines and fraudulent
concealment of such was reported by OSHA on its worksheet, violation and civil penalty dated September 30, 1999"; (2) "I
was not working for Southwest Airlines at this time and never received any information regarding the OSHA violation of
September 30, 1999, and, in particular, Southwest Airlines's continued failure to correct microbial growth and the lack of
maintenance, until I was advised by my attorney in October of 2001"; (3) "The U.S. Department of Labor, Occupational
Safety and Health Administration's findings of September 30, 1999, were not made public and were not made available to
me by any other source until October, 2001"; (4) "Southwest Airlines, at all times, concealed their continued failure to
repair the indoor quality problems"; (5) "Southwest Airlines intentionally exposed me to environmental conditions that were
contaminated with excess moisture, tobacco smoke, pesticides, dust and microbial agents resulting in my injuries and
causing damage"; and (6) "I worked as a Reservations agent in the San Antonio Reservation Center for Southwest Airlines
and became ill as a result of the interior environmental condition, including moisture, tobacco smoke, pesticides, dust and
microbial agents[.]"